```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
```

|   |   |   |
|---|---|---|
| LARRY G. BEACH | : | |
| | : | |
| v. | : | Civil Action No. DKC 08-2362 |
| | : | |
| U.S. POSTAL SERVICE, et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in action are the motions to dismiss, or alternatively, for summary judgment filed by Defendants National Rural Letter Carriers' Association ("NRLCA") and United States Postal Service ("USPS"). (Papers 15, 16). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motions will be granted.

**I. Background**

Plaintiff Larry Beach is employed by USPS as a rural route letter carrier ("rural letter carrier"). In addition, he is part of a bargaining unit of approximately 120,000 rural letter carriers. Since 1970, the NRLCA has been the exclusive collective bargaining representative for these rural carriers.

USPS does not compensate its rural letter carriers on an hourly basis. Rather, it pays these employees an annual salary, calculated using a mathematical extrapolation of data collected on rural routes during a representative two or four-week period, known

as the "mail count" period.  During the mail count period, USPS management tracks various elements of a rural letter carrier's job tasks, including the time spent at the post office performing tasks that facilitate subsequent delivery of items, the volume of mail handled, and the number of miles traveled.  USPS then uses this data to develop an annual salary rate for rural letter carriers.  Once USPS establishes this salary rate, the salary for a rural letter carrier is fixed, regardless of whether the actual volume of mail delivered differs from the volume tracked during the mail count period.

Problems arose following the 2002 mail count period, during which nearly all of the approximately 70,000 rural routes were observed.  The NRLCA filed a national grievance against USPS, alleging that USPS attempted to manipulate certain elements tracked as part of the mail count in order to reduce the salary paid to its rural letter carriers.  Pursuant to Article 15 of the collective bargaining agreement between the parties, the grievance proceeded to arbitration.  Arbitrator Dana E. Eischen presided over the arbitration and concluded, in a detailed decision issued on May 15, 2006, that USPS had erred in its evaluation of certain elements during the 2002 mail count, thereby breaching the collective bargaining agreement.  He further concluded that USPS must modify those elements of the mail count and compensate NRLCA members

accordingly for financial losses they had suffered in the interim.

Following the issuance of Arbitrator Eischen's decision, USPS and the NRLCA conducted additional arbitration proceedings to determine the scope of the remedy to be awarded to rural letter carriers.  Because the two parties were unable to reach an agreement, Arbitrator Eischen issued a second decision on June 15, 2007, providing further guidance on the remedy for USPS's breach of the collective bargaining agreement.  Specifically, Arbitrator Eischen proposed that approximately 21% of rural routes (and the rural carriers serving those routes) were entitled to a monetary remedy, while the remaining members of the bargaining unit were not entitled to any remedial compensation.  In his decision, however, Arbitrator Eischen also stated that USPS and the NRLCA remained free to negotiate and "to agree on any and all alternate methods of providing remedial relief."  (Paper 16, at 5).

USPS and the NRLCA chose to adopt Arbitrator Eischen's second proposal and subsequently negotiated a private settlement of the 2002 mail count grievances on December 14, 2007.  The settlement provided that, instead of making larger *pro rata* payments to carriers serving 21% of the rural routes, smaller payments would be made to 100% of the bargaining unit.  In addition to resolving the 2002 mail count grievances, the settlement also resolved multiple grievances related to later mail counts, which had not yet come

3

before an arbitrator.  The NRLCA publicized the settlement in the January 2008 issue of its magazine, *The Carrier*, explaining that the NRLCA had desired to obtain a settlement that would "afford each and every bargaining unit rural letter carrier a meaningful remedy."  (Paper 15, at 4).  USPS paid Plaintiff $780, his share of the settlement agreement, in his January paycheck, which Plaintiff received on January 17, 2008.

On January 19, 2008, Plaintiff filed two grievances with USPS managers at the Waldorf, Maryland post office: (1) against the NRLCA, which stated the issue as "Did The NRLCA fail to properly represent me when reaching a mutual agreement modifying the National Arbitration decision of the 2002 mail count?"; and (2) against USPS, which stated the issue as "Did the USPS violate my rights under the National Arbitration decision of the 2002 mail count by negotiating a different resolution with the NRLCA which resulted in my compensation being [sic]."  (Paper 2, Ex. E).  Both grievances specified "date of incident" as January 11, 2008.  On March 19, 2008, USPS and the NRLCA resolved Plaintiff's grievances by withdrawing them.

On August 5, 2008, Plaintiff, proceeding *pro se*, filed a complaint in the District Court of Maryland for Charles County, naming both USPS and the NRLCA as Defendants, disputing the parties' private settlement of the 2002 mail count grievance, and seeking $14,000.  Plaintiff attached several exhibits to his

4

complaint, including: (1) excerpts of Arbitrator Eischen's decisions; (2) a copy of the private settlement agreement reached between USPS and the NRLCA; (3) his January 17, 2008 pay stub; (4) copies of the grievances that he filed against both USPS and the NRLCA; and (5) a series of calculations demonstrating the amount of his financial loss as a result of the parties' adoption of a private settlement agreement. (Paper 2, Ex. A-F).  Defendants USPS and the NRLCA removed the case to this court on September 10, 2008. (Paper 1).

On November 12, 2008, both Defendants filed motions to dismiss, or alternatively, for summary judgment, contending that Plaintiff's claims are barred by the applicable statute of limitations.  In addition, Defendants maintain that USPS did not breach the collective bargaining agreement, and the NRLCA did not breach its duty of fair representation by privately settling the 2002 mail count grievances.  (Papers 15, 16).

**II. Standard of Review**

Defendants have moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), or alternatively, for summary judgment under Fed.R.Civ.P. 56.  A court considers only the pleadings when deciding a Rule 12(b)(6) motion.  Where, as here, the parties present matters outside of the pleadings and the court considers those matters as it does here, the court will treat the motion as one for summary judgment.  *See Gadsby by Gadsby v. Grasmick*, 109

5

F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her

6

claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celetox Corp.*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.  However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997), *cert. denied*, 522 U.S. 810 (1997).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**III. Analysis**

    **A.   Statute of Limitations**

Plaintiff alleges that both USPS and the NRLCA took "improper action" in reaching the settlement agreement.  The gravamen of Plaintiff's complaint is that USPS breached the collective bargaining agreement, in violation of 39 U.S.C. § 1208 (the Postal Service's analogue for § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 *et seq.*), and that the Union breached its duty of fair representation.  Such claims are commonly referred to

7

as hybrid § 301/fair representation claims.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)(describing the interactions of claims in a "hybrid § 301/fair representation claim").

A six-month statute of limitations applies to hybrid actions brought pursuant to § 301(a).  *DelCostello*, 462 U.S. at 169 (1983). Defendants assert that Plaintiff's claim should be dismissed as time-barred.  Specifically, Defendants contend that Plaintiff's cause of action began to accrue, at the latest, on January 19, 2008, when Plaintiff filed his internal grievances against USPS and the NRLCA.  Defendants argue that when Plaintiff filed suit against them on August 5, 2008, the applicable limitations period had passed, thereby making Plaintiff's claims untimely.  Defendants further argue that the grievances Plaintiff filed against them did not toll the statute of limitations.  (Papers 15, 16).  Plaintiff counters that the statute of limitations did not begin to run until March 19, 2008, when USPS and the NRLCA withdrew his grievances, because he was required to exhaust internal grievance procedures before filing a formal action against Defendants.  As a result, Plaintiff asserts that he filed his claims within the applicable limitations period.  (Papers 18, 19).

Generally, the statute of limitations for a hybrid action runs "from the time when [the plaintiff] discovered his injury or should have discovered it through the exercise of reasonable diligence."

*Smith v. Local 7898, United Steelworkers of Am.*, 834 F.2d 93, 95 (4th Cir. 1987). If the plaintiff fails to bring his claim in federal court within six months of the date of accrual, the court may dismiss plaintiff's claim as time-barred. *See Cannon v. Kroger Co.*, 832 F.2d 303, 305-06 (4th Cir. 1987).

"Application of this general rule turns on the context in which the claim arose." *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 421 (10th Cir. 1990). When the hybrid action does not stem from the employer and the union's processing of the plaintiff's grievance, a more complex analysis is required. *See Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986). Instead of looking to the date that the plaintiff discovered or reasonably should have discovered his injury, courts faced with hybrid actions arising in a non-grievance context look to whether the plaintiff has subsequently made a "good-faith attempt to exhaust [his] contractual remedies." *Id.* at 1510. If the plaintiff has done so, the statute of limitations is tolled. *Lucas*, 909 F.2d at 421-22.

For example, in *Galindo*, 793 F.2d at 1506-07, the plaintiff filed a hybrid action against his employer and his union on October 19, 1983, after the employer terminated plaintiff's employment on February 6, 1983. The plaintiff claimed that his employer breached his employment agreement and the union breached its duty of fair representation by laying him off despite his alleged "super seniority" status. Noting that the plaintiff had undergone

internal grievance procedures prior to filing his federal claim, the court rejected the defendants' argument that the plaintiff's claim was time-barred.  The court explained that, while under the general rule, the plaintiff's claim would have begun to accrue in early February 1983, the plaintiff's good-faith attempt to exhaust internal contractual remedies tolled the limitations period. Reasoning that application of the general rule "would undercut the national policy favoring nonjudicial resolution of labor disputes," the court concluded that the statute of limitations was tolled until June 1, 1983, when plaintiff's attempt to resolve his claims through internal grievance procedures ended unsuccessfully. Because plaintiff filed his claim within six months of June 1, 1983, plaintiff's federal action was timely filed.

Other courts have tolled the limitations period for plaintiffs who have attempted to undergo internal grievance procedures, adopting reasoning similar to *Galindo*, even if the procedures attempted were futile or did not result in the filing of a valid internal grievance. *See, e.g., Assoc. of Frigidaire Model Makers v. Gen. Motors Corp.*, 710 F.Supp. 1149, 1151 (S.D. Ohio 1988)(explaining that the law requires a valid attempt to file a grievance, "even if an attempt to grieve does not have a chance of succeeding" and does not constitute a "valid grievance"); *Adkins v. Int'l Union of Elec., Radio & Mach. Workers*, 769 F.2d 330, 336 (6th Cir. 1985)(same).

Here, within one month of the Defendants' private settlement of the 2002 mail count grievance, Plaintiff filed internal grievances against both USPS and the NRLCA. Defendants withdrew those grievances on March 19, 2008, and Plaintiff filed the present action on August 5, 2008. Defendant NRLCA appears to argue that Plaintiff's grievance against NRLCA failed to toll the statute of limitations because it was not the appropriate mechanism to file grievances against the NRLCA. (Paper 15, at 11 n.6). Even if NRLCA is correct that Plaintiff filed to file the correct form, which seems dubious given that the form is titled "USPS-NRLCA Joint Step 1 Grievance Form," such an error would not prevent the tolling of the statute of limitations. *See Assoc. of Frigidaire Model Makers*, 710 F.Supp. at 1151.

Defendants also refer to cases in which courts declined to toll the statute of limitations for plaintiffs who pursued parallel remedies before bringing hybrid actions in federal court. In each case, courts declined to toll the statute of limitations for plaintiffs who had first pursued charges against their employers and unions through the Equal Employment Opportunity Commission, National Labor Relations Board, or Worker's Compensation Board. *See, e.g., Kolomick v. United Steelworkers of Am., District 8*, 762 F.2d 354, (4th Cir. 1985); *Youngsblood v. Potter*, 262 F.Supp.2d 1309, 1318 (M.D.Ala. 2003); *Harris v. Alumax Mill Prods.*, 897 F.2d 400, 404 (9th Cir. 1990).). However, the analogy that Defendants

11

seek to draw between these cases and the present action is unpersuasive. These cases involve a plaintiff's use of remedies external to the employer and union. Here, Plaintiff did not seek a parallel remedy through external channels. Rather, Plaintiff attempted to resolve his grievances through internal avenues, namely by filling out two official grievance forms provided by USPS and the NRLCA. Therefore, the statute of limitations did not begin to run until March 19, 2008 when Plaintiff was informed that his grievances were withdrawn. Defendants have not shown that Plaintiff's complaint filed on August 5, 2008, approximately five months later, is untimely.

### B.   Duty of Fair Representation

Alternatively, Defendants argue that even if Plaintiff's complaint was timely filed, they are entitled to summary judgment because Plaintiff cannot establish that Defendants breached a duty of fair representation. To prevail on a hybrid action, the employee must show: "(1) that the employer violated the terms of the collective bargaining agreement; and (2) that the union breached its duty of fair representation by acting in 'discriminatory, dishonest, arbitrary, or perfunctory fashion.'" *Mincey v. U.S. Postal Serv.*, 879 F.Supp. 567, 572 (D.S.C. 1995)(quoting *DelColstello*, 462 U.S. at 164). Both elements must be established to prevail against either party. *See DelColstello*, 462 U.S. at 165.

First, Defendants assert that Plaintiff cannot establish USPS violated the collective bargaining agreement. Defendants point out that the collective bargaining agreement provides that disputes, such as the dispute arising from the 2002 mail count, would be submitted to arbitration. As noted in the arbitration decision provided by Defendants, "Article 15, Section 5 of the National Agreement between the [USPS] and the [NRLCA] provides for two-tier grievance arbitration." (Paper 16, Ex. 1, at 2). Indeed, Plaintiff provides the relevant portion of the National Agreement:

> It is agreed that in the event of a dispute between the Union and the Employer as to the interpretation of this Agreement, such dispute may be initiated as a grievance at the Step 4 level by the President of the Union. . . . Thereafter the parties shall meet at Step 4 within thirty (30) days in an effort to define the precise issues involved, develop all necessary facts, and reach agreement. Should they fail to agree, then, within fifteen (15) days of such meeting, each party shall provide the other with a statement in writing of its understanding of the issues involved, and the facts giving rise to such issues. In the event the parties have failed to reach agreement within sixty (60) days of the initiation of the grievance at Step 4, the Union may appeal it to arbitration, within thirty (30) days thereafter.

(Paper 18, Ex. 3, National Agreement Art. 15.5.A § D). Plaintiff does not dispute that the matter was properly sent to arbitration. Additionally, Plaintiff does not provide any evidence demonstrating that USPS did not abide by the procedures set forth in Article

13

15.5.A. As such, Plaintiff cannot establish that USPS breached the collective bargaining agreement.

Second, Defendants contend that Plaintiff cannot establish that the Union breached its duty of fair representation. Defendants argue that the facts of this case are similar to *Panrell v. United Mine Workers of Am.*, 872 F.Supp 1502 (N.D.W.Va. 1995). In *Panrell*, union members brought a breach of duty of fair representation claim against the union in connection with distribution of proceeds from a civil lawsuit. The plaintiffs alleged that the union erroneously distributed the proceeds to 525 union members, after leading the plaintiffs to believe that the proceeds would be distributed to only 207 members. The court rejected the plaintiffs' claim, reasoning that the plaintiffs had not "met their burden of establishing that defendant acted in bad faith in allegedly changing the proceeds of the settlement . . . ." *Id*. at 1506. The court noted that "[b]ad faith requires a showing of fraud, or deceitful or dishonest action. . . . Bad faith may also be shown by evidence of intentionally misleading or sufficiently egregious misstatements by the union." *Id.* (internal citations and quotations omitted).

Here, Plaintiff neither alleges nor submits evidence that Defendants acted arbitrarily or in bad faith. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far

14

outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)(internal citation omitted).  Plaintiff's sole basis for complaining about the settlement appears to be that he was entitled to a larger share of the 2002 mail count remedy.  However, Plaintiff's bare assertions without any evidentiary support are insufficient to show that the Union breached its duty of fair representation.

**IV. Conclusion**

For the foregoing reasons, Defendants' motions to dismiss, or alternatively, for summary judgment will be granted.  A separate Order will follow.

                                                                                      /s/
                                            DEBORAH K. CHASANOW
                                            United States District Judge